**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

ANTHONY JEROME JEFFRIES,

    Petitioner,

    v.

    Civil Action No.: PJM-22-1690

WILLIAM BOHRER, Warden[1]

    Respondent.

---

**<u>MEMORANDUM OPINION</u>**

    Self-represented Petitioner Anthony Jerome Jeffries filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his 2018 convictions in the Circuit Court for Montgomery County, Maryland for robbery and conspiracy to commit robbery. ECF No. 1.[2] Respondent filed an Answer arguing that several of Petitioner's claims are procedurally defaulted and the remainder of his claims are without merit. ECF No. 6. Jeffries was notified of his opportunity to respond (ECF No. 7) and has filed a response. ECF No. 8.

    There is no need for an evidentiary hearing. *See* Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts and Local Rule 105.6 (D. Md. 2023); *see also Fisher v. Lee*, 215 F. 3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons that follow, the Petition is denied, and a certificate of appealability shall not issue.

---

[1] William Bohrer is the Warden of Jeffries' place of incarceration and thus his custodian and the proper Respondent for this Petition. *Rumsfeld v. Padilla,* 542 U.S. 426 (2004). The Clerk shall amend the docket to substitute William Bohrer as Respondent.

[2] Citations refer to the pagination assigned by the Court's Case Management and Electronic Case Files system.

I.     **BACKGROUND**

**A. Trial**

On November 14, 2018, Jeffries was convicted by a jury of robbery and conspiracy to commit robbery. ECF No. 6-1 at 6, 12; ECF No. 6-4 at 33. He was acquitted of armed robbery. *Id*. On December 19, 2018, the court sentenced Jeffries to a total of 25 years' incarceration: 15 years on the robbery count, and a consecutive 10 years on the conspiracy count. ECF No. 6-1 at 12. The Maryland Appellate Court (formerly known as the Maryland Court of Special Appeals) summarized the facts of Jeffries case as follows:

> At trial, the victim, Mr. Leon, testified that, on the night of the robbery, [February 28, 2018,] he was walking in the area of the Wheaton Metro station when he encountered a man named "Oscar," whom Mr. Leon knew "from middle school." Mr. Leon testified that, at the time of the encounter, Oscar was with another individual whom Mr. Leon did not recognize. After greeting Oscar with a "high-five," Mr. Leon "just kept walking."
>
> Mr. Leon testified that, as he continued walking, he observed that Oscar and the other individual were following him, which Mr. Leon found "unusual" because he and Oscar did not "hang out." After Mr. Leon had walked a short distance away from the Wheaton Metro station, Oscar approached him and "offered to sell [him] some t-shirts." As Oscar was showing Mr. Leon some shirts, the other individual, whom Mr. Leon identified in court as Jeffries, grabbed Mr. Leon from behind, "put a gun to [him]," and said, "roam your pockets." When Mr. Leon told Jeffries that he "didn't have anything," Jeffries "pistol whipped [him] on the face twice" and then grabbed a book bag that Mr. Leon had been carrying. Immediately thereafter, both Oscar and Jeffries "ran off." Mr. Leon testified that the police arrived on the scene not long after the robbery.
>
> During Mr. Leon's testimony, the State introduced, and the circuit court admitted, three videos, two of which were the Wheaton Metro and J.C. Penney videos. The third video came from a surveillance camera located outside Netvue Mobile, a retail store sited near where the robbery occurred. In that video, Mr. Leon, Oscar, and Jeffries can be seen walking through a parking lot at approximately 10:00 p.m. on February 28, 2018, the night of the robbery. Shortly thereafter, Jeffries can be seen striking Mr. Leon and then leaving the scene with Oscar.
>
> Although the State did not publish the Wheaton Metro video or the J.C. Penney video during Mr. Leon's testimony, it did publish three still images taken from

the Wheaton Metro video and two images taken from the J.C. Penney video, all of which were shown to Mr. Leon. Mr. Leon testified that one of the images taken from the Wheaton Metro video showed "Oscar" together with "the other guy," both of whom were "involved in the robbery." Another image, also taken from the Wheaton Metro video, showed Mr. Leon "walking out of the Metro station" carrying a red backpack "while Oscar is right on [his] side." Mr. Leon testified that the two images taken from the J.C. Penney video showed Oscar together with "Anthony" in the area of the robbery.

Following Mr. Leon's testimony, Montgomery County Police Detective John Chucoski testified for the State. Detective Chucoski testified that he was assigned to investigate the robbery and that, in so doing, he obtained the Wheaton Metro, J.C. Penney, and Netvue videos. Detective Chucoski testified that the Wheaton Metro video showed the "Metro tunnel at the bus turnaround at the Wheaton Metro Station" from 9:30 p.m. until 10:30 pm. on the night of the robbery. According to Detective Chucoski, at some point in the video, Mr. Leon can be seen "dabb[ing] or kind of greet[ing] Oscar as he was walking out of the Metro tunnel." Regarding the J.C. Penney video, Detective Chucoski testified that the video was taken around 7:00 p.m. on the night of the robbery and showed the store's "lower level," which was "inside the Westfield Wheaton Mall" and "directly across the parking lot from the bus turnaround and Metro Station."

Detective Chucoski testified that, after viewing both videos following the robbery, he "clipped" several still images from the videos, which he then showed to Mr. Leon. Upon viewing those images, Mr. Leon recognized both Oscar and the other individual who "committed the actual robbery." Because Mr. Leon could not identify the second suspect by name, Detective Chucoski posted an image of the suspect on "a web board" that was viewable by other police officers. Shortly thereafter, Detective Chucoski was contacted by another officer, who informed Detective Chucoski that he recognized the suspect as someone he had investigated "in the past" and who was "known to have criminal history." Based on that information, Detective Chucoski was able to identify Jeffries as the suspect that Mr. Leon had identified as having "committed the actual robbery."

ECF No. 6-1 at 113-16 (footnote omitted)

## B. Direct Appeal

Jeffries filed a timely appeal asserting two claims:

1. Did the trial court err when it permitted the State to introduce surveillance video and photographs without testimony of authenticity?
2. Was the evidence sufficient to sustain the conviction of conspiracy to commit robbery?

ECF No. 6-1 at 111.

On October 16, 2019, the court affirmed Jeffries' judgment of conviction. *Id*. at 125. The court's mandate issued on November 19, 2019. *Id*. at 126. Jeffries did not file a petition for a writ of certiorari in the Supreme Court of Maryland (formerly known as the Court of Appeals of Maryland). ECF No. 1 at 2; ECF No. 6-1.

### C.    Post Conviction Proceedings

Jeffries filed a pro se petition for post-conviction relief in state circuit court on November 26, 2019.  ECF No. 6-1 at 127-31.  Jeffries later filed a counselled supplemental petition. *Id*. at 134-52. Jeffries asserted the following grounds for relief:[3]

a.  Trial counsel erred by conceding guilt to robbery over [Jeffries'] objections;

b.  Trial counsel rendered ineffective assistance by presenting inconsistent theories of the defense to the jury;

c.  Trial counsel rendered ineffective assistance by failing to object to prior bad acts evidence;

d.  Trial counsel rendered ineffective assistance through cumulative errors; and,

e.  Trial counsel erred by failing to call [Jeffries'] co-defendant as a witness.

ECF No. 6-1 at 154-55.

The State answered the petition and the circuit court held a hearing on April 22, 2021. ECF No. 6-1 at 6.  On May 7, 2021, the post-conviction court issued a memorandum opinion and order, denying the petition. *Id*. at 154-65,  Jeffries filed a timely application for leave to appeal the denial of post-conviction relief, *id*. at 166, which was summarily denied on October 1, 2021. *Id*. at 200-01. The court's mandate issued on November 2, 2021. *Id*. at 202.

---

[3]Jeffries asserted additional claims which he abandoned during the state proceedings. ECF No. 6-1 at 154-55.

### D. Federal Petition

On July 8, 2022 Jeffries filed his Petition in this Court. *See* ECF No. 1. He raises the

following arguments:

A. Trial counsel erred by conceding guilt to robbery over Jeffries' objections;

B. Trial counsel rendered ineffective assistance by presenting inconsistent theories of the defense to the jury;

C. Trial counsel rendered ineffective assistance by failing to object to prior bad acts evidence;

D. Trial counsel rendered ineffective assistance through cumulative errors;

ECF No. 1; ECF No. 1-1. In support of his cumulative error claim, Jeffries also argues that:

E. Trial counsel erred by failing to call his co-defendant as a witness;

F. Violation of his right to a speedy trial;

G. The public defender initially assigned to his case had a conflict of interest;

H. Trial counsel erred in failing to argue ownership of the white HTC phone or to challenge the authenticity of social media accounts;

I. Trial counsel erred in failing to "bring up how the victim lied and change[d] his statement"; and

J. The evidence was insufficient to convict him.

ECF No. 1-1 at 4-6.

## II.   PROCEDURAL DEFAULT

Respondent contends that Claims F through J are procedurally defaulted. Procedural

default of a claim occurs when the petitioner failed to present the claim to the highest state court

with jurisdiction to hear it, and the state courts would now find that the petitioner cannot assert

that claim. *Mickens v. Taylor*, 240 F.3d 348, 356 (4th Cir. 2001); *Breard v. Pruett*, 134 F.3d

615, 619 (4th Cir. 1998). A procedural default also may occur where a state court declines "to

consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999); *see also Gray v. Zook*, 806 F.3d 783, 798 (4th Cir. 2015) (noting that "[w]hen a petitioner fails to comply with state procedural rules and a state court dismisses a claim on those grounds, the claim is procedurally defaulted."). As the United States Court of Appeals for the Fourth Circuit has explained, "if a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Breard*, 134 F.3d at 619 (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991), *holding modified by Martinez v. Ryan*, 566 U.S. 1(2012)).

For a person convicted of a criminal offense in Maryland, exhaustion may be accomplished either on direct appeal or in post-conviction proceedings.  To exhaust a claim on direct appeal in non-capital cases, a defendant must assert the claim in an appeal to the Appellate Court of Maryland and then to the Supreme Court of Maryland by way of a petition for writ of certiorari.  *See* Md. Code Ann., Cts. & Jud. Proc. §§ 12-201, 12-301.  To exhaust a claim through post-conviction proceedings, a defendant must assert the claim in a petition filed in the Circuit Court in which the inmate was convicted within 10 years of the date of sentencing.  *See* Md. Code Ann., Crim. Proc. §§ 7-101–7-103.  After a decision on a post-conviction petition, further review is available through an application for leave to appeal filed with the Appellate Court of Maryland.  *Id.* § 7-109.  If the Appellate Court of Maryland denies the application, no further review is available, and the claim is exhausted.  Md. Code Ann., Cts. And Jud. Proc. § 12-202. Maryland law does not permit a second and successive state petition for post-conviction relief.  Md. Code Ann., Crim. Proc. § 7-103(a).

Before a federal court may consider a claim raised in a federal habeas petition, the petitioner must first present the claim in state court and pursue it at every stage of the state proceeding, whether through post-conviction or on direct appeal. *See Coleman*, 501 U.S. at 749–50 (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim in post-conviction petition); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief). Failure to do so renders the claim procedurally defaulted, foreclosing federal habeas relief. *Mickens*, 240 F.3d at 356; *Breard*, 134 F.3d at 619.

Further, a federal habeas court may consider only those issues which have been "fairly presented" to the state courts. *Picard v. Connor,* 404 U.S. 270, 275–78, (1971). Although the claims presented need not be "identical," *see Ramdass v. Angelone,* 187 F.3d 396, 409 (4th Cir. 1999), the petitioner must present the "'substance' of his federal habeas corpus claim." *Anderson v. Harless,* 459 U.S. 4, 6, (1982) (per curiam). Presenting the "substance" of the claim requires that the claim "be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." *Mallory v. Smith,* 27 F.3d 991, 995 (4th Cir. 1994) (quoting *Martens v. Shannon,* 836 F.2d 715, 717 (1st Cir. 1988)). In other words, fair presentation contemplates that "both the operative facts and the controlling legal principles must be presented to the state court." *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000) (internal citations omitted). The petitioner must present "both the operative facts and the controlling legal principles associated with each claim." *Mahdi v. Stirling*, 20 F.4th 846, 892 (4th Cir. 2021).

Even if a claim is procedurally defaulted, this Court may still address the claim if the

petitioner provides sufficient "cause" for not raising the claim and "actual prejudice" resulting from the error. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Reed v. Farley*, 512 U.S. 339, 354 (1994); *United States v. Frady*, 456 U.S. 152, 167-68 (1982). "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Bousley*, 523 U.S. at 622 (quoting *Murray*, 477 U.S. at 488).

Alternatively, the Court may reach a defaulted claim to avoid a miscarriage of justice; that is, conviction of one who is actually innocent. *See Murray*, 477 U.S. at 495-96; *Breard*, 134 F.3d at 620. "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray,* 477 U.S. at 496; *Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003). Assertions of actual innocence used as a gateway to review an otherwise defaulted claim must be supported by new evidence that demonstrates no reasonable juror could have convicted the petitioner. *Buckner v. Polk*, 453 F.3d 195, 199-200 (4th Cir. 2006).

Respondent contends that Jeffries' claims that: his right to a speedy trial was violated; the public defender initially assigned to his case had a conflict of interest; trial counsel erred in failing to argue ownership of the white HTC phone or to challenge the authenticity of social media accounts; trial counsel erred in failing to "bring up how the victim lied and change[d] his statement"; and that the evidence was insufficient to convict him are procedurally defaulted. This Court agrees.

The record demonstrates that Jeffries did not raise his claims that: his right to a speedy trial was violated; the public defender initially assigned to his case had a conflict of interest;

trial counsel erred in failing to argue ownership of the white HTC phone or to challenge the authenticity of social media accounts; and that trial counsel erred in failing to "bring up how the victim lied and change[d] his statement" in any state court either on direct appeal or in his post-conviction proceedings. [4]  Moreover, Jeffries did not assert any of these claims in his application for leave to appeal the denial of post-conviction relief filed in the Appellate Court of Maryland *See Pevia v. Bishop*, Civil. No. ELH-16-1223, 2019 WL 3412649, at *13 (D. Md. July 26, 2019) ("The unexhausted claims are procedurally defaulted, as [Petitioner] failed to present them in his application for leave to appeal and the state courts would now find that he cannot assert those claims."). As such, each of these claims are unexhausted. Since Maryland law permits only one state petition for post-conviction relief, Jeffries may no longer pursue these grounds in state court. *See* Md. Code Ann., Crim. Proc. § 7-103(a). Accordingly, these claims are now procedurally defaulted. *See Breard*, 134 F.3d at 619.

Additionally, while Jeffries alleged on appeal that the evidence was insufficient to sustain his conviction for conspiracy to commit robbery (ECF No. 6-1 at 111), here, he asserts that the evidence was insufficient to convict him because there was a lack of DNA evidence. ECF No. 1-1 at 4-6. Jeffries has not fairly presented the claim asserted here to any Maryland Court, as such, this claim is procedurally defaulted.  Moreover, while Jeffries raised a sufficiency of evidence claim on direct appeal, he failed to file a Petition for Writ of Certiorari. Thus to the extent Jeffries raised a sufficiency of evidence claim in his direct appeal, that claim is also unexhausted and now procedurally defaulted. *Gray*, 806 F.3d at 798 (holding that "when a habeas petitioner fails to exhaust state remedies for a claim, federal review is not available

---

[4] Jeffries' post-conviction application included a claim that his right to a speedy trial was violated but he withdrew that claim at his post-conviction hearing. ECF No. 6-1 at 154-164.

until the petitioner either returns to state court with the claim or demonstrates that such an attempt would be futile, in which case the claim is treated as procedurally defaulted.").

There is no State corrective process now available to Jeffries on the issues asserted in Claims F through J and accordingly each of these claims are procedurally defaulted. *Gray*, 806 F.3d at 798 (holding "when a habeas petitioner fails to exhaust state remedies for a claim, federal review is not available until the petitioner either returns to state court with the claim or demonstrates that such an attempt would be futile, in which case the claim is treated as procedurally defaulted."). Jeffries offers no justiciable reason to excuse the default. [5]

## III.   ANALYSIS NON-DEFAULTED CLAIM

### A.  Standard of Review

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall,* 572 U.S.415, 419-20 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood

---

[5] Even if Jeffries's claims were not procedurally defaulted, they would not entitle him to relief.  This Court gives "considerable deference to the state court decision," and may not grant habeas relief unless the state court arrived at a "'decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or 'a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  *Nicolas v. Att'y Gen. of Md.*, 820 F.3d 124, 129 (4th Cir. 2016) (quoting 28 U.S.C.A. § 2254(d)).  Jeffries has made no such showing.

and comprehended in existing law beyond any possibility for fair minded disagreement")).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id*. at 785 (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id*. "[A] federal habeas court may not issue the writ simply because [it] concludes in its

independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett,* 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379.

### B. Ineffective Assistance Of Counsel

The Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, 580 U.S. 100, 118 (2017). To mount a successful challenge based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687-88. *See Williams*, 529 U.S. at 390. First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 580 U.S. at 119.

With regard to the first prong, the petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688; *see Harrington*, 562 U.S. at 104. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from

best practices or most common custom." *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690). The Supreme Court has reiterated that the "first prong sets a high bar." *Buck*, 580 U.S. at 118. Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Id.* (citation omitted). The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669. Judicial scrutiny of counsel's performance must be "'highly deferential'" and not based on hindsight. *Stokes v. Stirling*, 10 F.4th 236, 246 (4th Cir. 2021) (citing *Strickland*, 466 U.S. at 689).

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 580 U.S. at 119. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id.* at 696. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error]

would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

In evaluating whether the petitioner has satisfied the two-pronged test set forth in *Strickland*, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697.  Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015).  This is because failure to satisfy either prong is fatal to a petitioner's claim.  As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

## IV.   ANALYSIS

### A.  Concession of guilt

Jeffries asserts that trial counsel erred when they conceded before the jury and over Jeffries' objection that he was guilty of robbery.  ECF No. 1; ECF No. 6-1 at 135, 157.  The post-conviction court examined this claim and rejected it, finding that the evidence adducd at trial was "overwhelming" and included video footage from several surveillance cameras, the victim's identification of Jeffries' as the person who hit and robbed him, and Jeffries' social media posts which placed him in the location of the robbery close in time to the robbery. *Id*. at 157.  The post-conviction court also noted:

> Facing an overwhelming State's case as to robbery, trial counsel advised petitioner to concede to the robbery, but argue that the "gun" used in the robbery (a lighter in the shape of a handgun) was fake—i.e., that there was no "dangerous weapon" as required for the armed robbery count. *See* Crim. Law. 3-403(a)(10. Petitioner, however, wanted to pursue an acquittal on all charges, and demanded that trial counsel, pursue a theory that Petitioner had been wrongly identified as the individual who committed the robbery. This disagreement tested the relationship between Petitioner and trial counsel, who testified to as many as ten

meetings with Petitioner to discuss the theory of the defense.

Ultimately, trial counsel determined to argue in the alternative: that the jury *should* acquit Petitioner of the robbery, but if they found Petitioner guilty of robbery, to then find that Petitioner didn't use a "dangerous weapon."   In furtherance of this argument, trial counsel elicited testimony related to the lighter found near Petitioner during his arrest, [ECF No. 6-13 at 52], and argued to the jury that "the weapon in this case. . . was not a handgun, it was a lighter, a lighter that is in the shape of a gun." [*Id*.] The State seized on the obvious tension between these arguments in its closing, telling the jury, "So he's saying I committed a robbery, but I didn't commit an armed robbery because that's not a gun." *He's pleading guilty* to some of the counts' he's charged with[.]" [ECF 6-4 at 30] (emphasis added).  Petitioner alleges that, by arguing in the alternative, trial counsel was "essentially conceding guilt of the robbery to the jury." [citation omitted].

ECF No. 6-1 at 157-58.

The post-conviction court properly observed that, "[w]hile 'trial management is lawyer's province,' a defendant does not surrender all control of their case to their attorney, *McCoy v. Louisian*a, 138 S. Ct. 1500, 1508, (2018). . . [and] [t]he decision to plead guilty falls squarely within the defendant's control. *McCoy*, 138 S.Ct. 1500, 1508 (2018)."  ECF No. 6-1 at 158.

In *McCoy*, defendant's trial counsel disregarded his client's clear instruction to pursue an acquittal and, instead, conceded his client's guilt in the liability phase of a capital trial in an effort to avoid the death penalty. 138 S.Ct. at 1506. In reviewing McCoy's direct appeal, the Supreme Court held that the "[a]utonomy to decide that the objective of the defense is to assert innocence" is a decision that is "reserved for the client," and is not a strategic decision that can be made by the attorney. *Id*. at 1508. Because the "client's autonomy, not counsel's competence, is in issue," the Supreme Court held that the error was "structural" and that the *Strickland* test did not apply to McCoy's appeal. 138 S. Ct. at 1510; *United States v. Hashimi*, 110 F.4th 621, 628 (4th Cir. 2024) (holding that because counsel's competence is not at issue regarding a

decision to maintain innocence or concede guilt, a violation of that autonomy right is not subject to the *Strickland* standard for ineffective assistance).

Here, the post-conviction court properly distinguished counsel's performance during Jeffries' trial and those that occurred in *McCoy* and found that in the instant case, "trial counsel did nothing to relieve the State of its burden, stating in opening that 'the fair, proper and just verdict in this case is not guilty.' Pet. Ex. 2 at 172:2-3. In closing, trial counsel urged the jury to "find reasonable doubt on robbery because its' there. Find reasonable doubt on robbery." Pet. Ex. 3 at 106:1-2." ECF No. 6-1 at 158-59.  The post-conviction court noted that presenting alternative arguments presented a risk for Jeffries which the state exploited, but nevertheless determined that trial counsel did not explicitly concede guilt. *Id.* at 159.

After reviewing the transcript of the trial, this Court agrees. Trial counsel did not explicitly concede guilt as to the robbery charge. In addition to arguing during opening and closing arguments that Jeffries should be acquitted of all charges, trial counsel also attempted to demonstrate reasonable doubt as to the identity of Jeffries as the assailant during his cross-examination of the responding officer, highlighting for the jury that Jeffries has a facial tattoo which the victim never mentioned in his description of his assailant. ECF No. 6-3 at 55. Additionally, trial counsel questioned the investigative techniques of law enforcement throughout the trial attempting to cast reasonable doubt on the identification of Jeffries as the assailant and the motivations of law enforcement in investigating him. ECF Nos. 6-3 and 6-4.

Unlike counsel in McCoy, who disregarded his client's clear instruction to pursue an acquittal, Jeffries' trial counsel did not concede guilt. The post-conviction court's determination that Jeffries did not establish a structural error under *McCoy* is supported by the record. Jeffries has failed to sustain his burden and the Court finds this claim is without merit.

**B.  Ineffective Assistance of Counsel  in Presenting Inconsistent Defense Theories**

Jeffries next argues, related to his first claim, that trial counsel rendered ineffective assistance when he advanced inconsistent theories of a defense, i.e. that Jeffries was not the assailant in the robbery and if he was, he did not use a gun during the commission of the robbery.

The post-conviction court rejected this argument recounting that at the post-conviction hearing trial counsel explained that he believed that attempting to challenge whether Jeffries was the assailant would be extremely difficult given the State's evidence—surveillance video of the crime-- and therefore he decided to argue in the alternative, with the additional goal of obtaining an acquittal on the armed robbery charge which carried the harshest sentence.  ECF No. 6-1 at 160.  The post-conviction court properly noted that *Strickland* did not guarantee Jeffries a perfect defense, but instead only a professionally competent one. The post-conviction held that "While trial counsel's tactical decision to argue in the alternative (or, as Petitioner put it, present 'inconsistent theories') to the jury exposed Petitioner to increased risk of a conviction on the robbery charge, it was an objectively reasonable decision given the State's strong case on agency." *Id*. at 160. The post-conviction court did not misapply *Strickland* and its findings of facts regarding trial counsel's tactics and the facts adduced at trial are supported by the record and will not be disturbed.

**C.  Ineffective Assistance of Counsel in Failing to Object to Prior Bad Acts Evidence**

Jeffries asserts that trial counsel erred in permitting bad act evidence to be presented to the jury without objection. The post-conviction court dismissed this claim finding, in pertinent part:

> As result of his existing criminal record, Petitioner was known to the authorities in Montgomery County. At the time of the two robberies, the Montgomery County Department of Police's Investigative Services Bureau ("ISB") was actively monitoring Petitioner's social media accounts. One of the ISB detectives monitoring Petitioner's accounts (specifically, Petitioner's Instagram) was

Detective Vitaletti ("Det. Vitaletti") who subsequently identified Plaintiff as a suspect in the robberies while reviewing surveillance footage. Prior to trial, Petitioner's counsel moved *in limine* to exclude or sanitize evidence related to Det. Vitaletti's prior knowledge of Petitioner, pursuant to Md. Rules 5-404 and 5- 403. Judge McGann ruled that, while the State would not be barred from presenting evidence that Det. Vitaletti had some prior knowledge of Petitioner, the State was to lead their witnesses on this subject matter, and not use words such as "suspect" or "criminal." Pet. Ex. at 24:5-8.

During the State's direct of another ISB detective, Detective Chuckoski ("Det. Chuckoski"), the State asked, "did [Det. Vitaletti] tell you how he knew the identity of [the person in the surveillance video]?" Pet. Ex. at 21:1-2. Trial counsel did not object. *Id*. Det. Chuckoski responded that Det. Vitaletti had "investigated [Petitioner] in the past, had been involved with interview with this person as well as somebody who is known to have *criminal* history." *Id*. at 21:3- (emphasis added). Shortly thereafter, in the State's direct of Det. Vitaletti, the State asked, "And you tell the ladies and gentlemen of the jury why you conduct monitoring of social media." *Id*. at 57:14-15. Again, trial counsel did not object. Det. Vitaletti responded that his monitoring of social media accounts was "For the crimes that my office investigates..." *Id.* at 57:16. Det. Vitaletti continued, "[at] certain times, *suspects* will post things related to the crimes and the victims on social media..." *Id*. at 57:18-19. (emphasis added). Though trial counsel did not object to either of the State's questions on direct, he did attempt to mitigate the detectives' responses on cross examination, obtaining testimony from each that their knowledge of Petitioner *could* exist because Petitioner had previously been victim of or witness to crime--not necessarily because Petitioner himself was a criminal. Pet. Ex. at 34:6-10; 63:15-20.

That Petitioner had a criminal history. as well as the fact that he was under ongoing investigation by ISB, was likely objectionable under both the Maryland Rules of Evidence and Judge McGann's earlier ruling as prior bad acts evidence. Md. Rule 5-404 ("Evidence of other crimes, wrongs, or acts... is not admissible to prove the character of a person in order to show action in conformity therewith"). The Court finds that, as to the first *Strickland* prong, counsel's performance in not objecting to this testimony was objectively deficient, notwithstanding his attempts to remedy the issue on cross examination. However, Petitioner also has the burden [of] meeting the second prong, that "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. 668, 687. Here, Petitioner's allegation of error fails. <u>First</u>, even without the detectives' testimony, the State's case on agency was, as Judge McGann would describe it at sentencing, "overwhelming." Pet. Ex. at 43:6; *see also*, *supra*, p. 4. The surveillance video observed by Det. Vitaletti was shown to the jury, and agency argued by trial counsel. Pet. Ex. at 106. The testimony suggesting that Defendant was known to the authorities, either as a suspect or a victim/witness, has limited weight. <u>Second</u>, trial counsel testified that part of his strategy was to use this very testimony against the State, by pursuing a theory that the State was

improperly "out to get" Petitioner. *See* Pet. Ex. at 105:5-7 ("This is not right. Okay, you want to get Anthony Jeffries, ok, you follow him on Instagram maybe you've got it out for Anthony Jeffries."). Though the Court finds trial counsel's failure to object to the testimony objectively deficient, when viewed in light of the entire record, Petitioner has not shown ""substantial possibility"" that the verdict of the trier of fact would have been affected by trial counsel's deficient performance. *See Bowers v. State*, 320 Md. 416, 426 (1990). Accordingly, the Petition will be denied on this ground.

ECF No. 6-1 at 160-163.

The post-conviction court's decision withstands scrutiny. As noted by the post-conviction court and confirmed by this Court's independent review of the record, the evidence of Jeffries' involvement in the robbery was overwhelming.  The weight of the evidence regarding the police knowing Jeffries and monitoring his social media account was thus limited and was used by trial counsel in his effort to question the efficacy and motive of the entire investigation into the crime. Jeffries has failed to demonstrate that he was prejudiced by trial counsel's deficient conduct in failing to object to the testimony regarding bad acts evidence. The circuit court's determination that trial counsel's failure was deficient but that Jeffries failed to carry his burden regarding prejudice was neither contrary to nor an unreasonable application of *Strickland*.  This claim is without merit.

### D. Cumulative Error of Trial Counsel

Jeffries also contends that cumulative errors by his trial counsel amount to ineffective assistance of counsel.  Ineffective assistance of counsel claims must be reviewed individually rather than collectively.  *Fisher v. Angelone*, 163 F.3d 835, 852 (4th Cir. 1998).  Moreover, "legitimate cumulative-error analysis evaluates only the effect of matters actually determined to be *constitutional error*, not the cumulative effect of all of counsel's actions deemed deficient." *Id.* at 852 n.9 (emphasis added).  Because the Court has concluded that trial counsel did not provide ineffective assistance of counsel, a cumulative error analysis is inappropriate,

and the circuit court's rejection of this claim for the same reasons is neither contrary to nor an unreasonable application of federal law.

### E.  Ineffective Assistance in Failing to Call Co-Defendant as a Witness

In his final claim Jeffries contends that his trial counsel was ineffective for failing to call his Co-Defendant as a witness at trial. ECF No. 1-1 at 4. Jeffries argues that his Co-Defendant should have been called as a witness because he wanted him "to testify to his statement and cross-examine to all that and that the Instagram was still in use after I was locked up. . . ." Jeffries asserts that his Co-Defendant would have testified that he was with another person the night of the robbery. *Id.* at 5.

The circuit court dismissed this claim holding:

> The question of whether to call a witness is a question of trial strategy ordinarily entrusted to counsel and is afforded 'great deference' by a reviewing court. *State v. Borchardt*, 396 Md. 586, 614 (2007). However, the decision not to call a witness 'must be grounded in a strategy that advances the client's interests.' *Id*. For the purposes of a claim of ineffective of assistance of counsel, and to overcome the deference afforded to trial counsel's decision, Petitioner must show that trial counsel refused to call his co-defendant 'without regard' for Petitioner's interests. *See also Strickland*, 466 U.S. at 690 (stating that 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable'). Petitioner has not provided the court with any evidence or testimony that would support his contention that trial counsel was acting 'without regard' for his interest in not calling Petitioner's co-defendant to the stand. As such, petitioner has not met his burden, and the court will deny the Petition on this ground.

ECF No. 6-1 at 164-165.

Choosing which witness to call is a classic example of trial strategy for which an attorney has broad discretion.  *See United States v. Chapman*, 593 F.3d 365, 369 (4th Cir. 2010) (explaining that the "decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney"); *see also United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004) (citing *United States v. Kozinski,* 16 F.3d 795, 813 (7th Cir. 1994) (The decision whether to call a

defense witness is "a 'strategic decision' demanding the assessment and balancing of perceived benefits against perceived risks, and one to which '[w]e must afford...enormous deference.'")). When a petitioner's ineffective assistance of counsel claim rests on trial counsel's failure to call particular witnesses, expert or otherwise, the Fourth Circuit requires "a specific proffer ... as to what [the] witness would have testified." A petitioner's failure to do so "reduces any claim of prejudice *to mere speculation* and is fatal to his claim." *Vandross v. Stirling*, 986 F.3d 442, 452 (4th Cir. 2021) (internal citations omitted). Here, Jeffries offers a mere belief regarding what his Co-Defendant's testimony would have been. This ground is based on mere speculation and therefore the circuit court's dismissal of the claim was neither contrary to nor an unreasonable application of federal law. Additionally, in regard to a decision to call or not call a witness, "there is a presumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" *Byram v. Ozmint,* 339 F.3d 203, 209 (4th Cir. 2003) (quoting *Strickland v. Washington,* 466 U.S. 668, 669 (1984)).

Trial counsel did not offer any testimony as to why he chose not to call the Co-Defendant. Additionally, Jeffries failed to present evidence regarding what he believed his Co-Defendant would have testified other than generally stating that he believed that his Co-Defendant would have identified someone else. *See generally*, ECF 6-6; ECF 6-6 at 29. In short, Jeffries offers a mere belief that his Co-Defendant would have testified in his favor. This ground is based on mere speculation and therefore the circuit court's dismissal of the claim was neither contrary to nor an unreasonable application of federal law.

## II.    CERTIFICATE OF APPEALABILITY

A petitioner may not appeal the dismissal or denial of a federal habeas petition without first receiving a certificate of appealability. 28 U.S.C. § 2253(c)(1). The Court may issue a

certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Under the controlling standard, a petitioner must show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  For a certificate of appealability to issue, a petitioner need not prove "that some jurists would grant the petition for habeas corpus." *Id.* at 338.

Jeffries's claims have been dismissed on substantive grounds.  Upon review of the record, this Court finds that Jeffries has not made the requisite showing.  The Court therefore declines to issue a Certificate of Appealability.  Jeffries may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate.  *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

## III.    CONCLUSION

For the foregoing reasons, the Court will deny Jeffries's Petition for Writ of Habeas Corpus and decline to issue a Certificate of Appealability.  A separate Order follows.

10/16/2024
Date

PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE